The next case on the calendar is Estremera v. United States. May it please the court, my name is Charles Wilson. I'm from the Federal Defender's Office in Connecticut. I represent Mr. Estremera, the appellant in this case, and the petitioner below. I've actually represented Mr. Estremera for quite some time, going all the way back to his trial where I was opposite then-assistant U.S. Attorney John Durham. And one of the interesting things about this is this was not a successive habeas petition. He filed no habeas petitions after his case, but we brought this claim for him in 2016. The key issue here is whether his Connecticut robbery convictions qualify as violent felonies after the residual clause having been struck. Judge Covello told us relatively early on that he thought that they still qualified under the forced clause. The robbery statute in Connecticut has undergone quite a review since that time. We got the decision from Judge Underhill, and then we came to this court on the government's appeal and argued the issue. Judge Leval was on the panel and asked a lot of good questions that day. I had the luxury of sitting in Assistant U.S. Attorney Silverman's seat, and it was one of the few times in my career as a defense lawyer where I thought about just resting on my briefs. But alas, the decision came out, and here we are. I recognize the status of the law in this area in terms of Shabazz. The petition for certiorari was denied by the Supreme Court, and then we have the Stokelyne case that came out not too long after this court issued its first opinion in Shabazz. That said, I'm not here to concede. Connecticut robbery is different than Florida robbery. They're both robbery. They're both about crimes, about taking things from people with force, but the language of the statutes are different. And one of the key things that the Supreme Court pointed out is that previously the state Supreme Court in Florida had indicated that robbery requires resistance by the victim that is overcome by the physical force of the offender. We don't have that comparable language either in the Connecticut statute or that comparable requirement in the Connecticut case law. Under Connecticut, though, you have to have either force or the threat of force to prevent resistance, to prevent it, to overcome it, or to compel the person to give the property over. So you have to have – it's person-to-person, right? It's not crystal clear on that, Your Honor. I will tell you that the standard case – It's not crystal clear that it's person-to-person, that you have to be in the presence of the other person? You have robbery by phone under Connecticut law? So the statute, when we look at the plain language of the statute, it doesn't require overcoming resistance. That's one of the ways that's listed. There is the second sub-prong, I'll say, of the statute where it's compelling the person to deliver up property or – Threaten or use the force to compel them to give it over, right? Well, you have to compel them to deliver up the property or engage in conduct which aids in the commission of the offense. So that latter prong would suggest that there could be a scenario where someone essentially is committing shoplifting, which is a larceny, right? So we have the larceny part of it. On their way out of the store, they're told, hey, stop. The person starts running, bangs into another customer, knocks them down negligently. That's force. It's force that's been involved in the taking of the property. That may very well count as robbery as well. The statutes, I guess getting back to my point here, the statutes are different, and the law in Connecticut doesn't have this issue about requiring the overcoming of force. It's not in the jury instructions. It's not an element that has to be proven out or be admitted by the defendant in order for a defendant to be guilty of robbery in Connecticut. My point is that there has to be the force or some threat of force, which is under the Stokely decision, is essentially once you have that element in there, their view was that that creates the issue of a person resisting. Even if you don't have to have overcoming resistance, once you exercise that force or threat of force, you have all these issues that Stokely talked about. So I think you have to be able to argue under Connecticut law that somehow it doesn't have to be in the presence of the person. I'm just not sure I see how that could be under Connecticut law. So much of what you said, Your Honor, I agree with. In terms of force, it's obviously an element in Connecticut. It's not an element in Florida. But what we have in Connecticut, and this is discussed to some extent in the Wright case. I looked at the Wright case. The Wright case, this is from Wright. Wright never said, at its mildest, it could involve no more than a threat of a pinch, a scratch, or a slap. They're talking about the simple robbery statute in Connecticut law, but they still say that it requires something, even a threat of a pinch or a slap. There's nothing in that decision that says that you don't have to be in the presence of the person and you don't have to have that minimal level of force or threat of force. I think you're overstating what Wright was holding. Well, my point in bringing up Wright is Wright also talks about larceny from the person, the second-degree version of robbery where you're actually taking the property off of the person, which that could involve a robbery. It doesn't necessarily involve it. Why does that matter? Because the reason it matters is when you look at the discussion in Wright about why larceny from a person is treated more severely, it's a higher-class felony in Connecticut than simple robbery is, the reasons that they give, it's almost as if the Supreme Court or this court had read that before writing this analysis that, you know, it's really about the risk of confrontation, the potential humiliation to the victim, and that things could escalate from there. The Connecticut court is using that to justify larceny from the person and then saying, okay, robbery is different. You don't have force or that element of potential force, but what they're saying is when you have the larceny, they said it's more easy to get away. You're violating a person's personal space. It's a trespass. So there are other reasons why they might want to classify that as a higher felony that are independent of the issue of the level of force. So I don't understand why that would necessarily somehow undermine Stokeling as it relates to simple robbery. I guess because my point is that in Connecticut we use larceny to address the situations where there's the person-to-person confrontation, and we treat that more severely in the state penalties that exist, which would necessarily imply that robbery is something different. Why would we have the existence of the robbery statute? Because robbery could involve not taking it off the person. It could involve a store where it's on the shelf or in the cash register. So you have one statute that deals with when you're taking it off a person where it involves numerous elements that Connecticut may want to treat it as a more serious felony, whereas robbery deals with not just the person but some other location besides being on the person. But if robbery deals with another location, then you're talking about moving away from this idea of the interpersonal confrontation. When I say another location, I mean it's still in the presence. I'm saying it's not on their person. It's in a cash register. It's on a shelf. I'm not saying that they're not face-to-face. Right, but the other thing to keep in mind when we look at Stokeling and this idea of overcoming resistance, that would suggest that there's an intentionalness to the force that's used in Florida, whereas in Connecticut, if you look at the elements for robbery, it's a simple robbery. The intent really goes to the larceny aspect of it. The intent is not addressing the force piece of it. Do you have any case in the history of Connecticut law where someone, the hypothetical you gave, where they're running out of the store and accidentally knocked over a person that they were found to be guilty of simple robbery? No, I'm drawn to, and this is in Connecticut, so I guess I'm drawn to, I want to say, Leocal, which has a discussion of what is force and that accidental hitting, running into someone, wouldn't necessarily be the physical force that's being at issue. That's, I want to say, the Florida DUI statute that was under review by the Supreme Court before 2010 Johnson, so it is a little bit older and obviously has different context. The issue about the intent and the significance of the intent and the force in Connecticut, which I think would further distance Connecticut from Florida robbery and the concerns addressed by Shabazz that are very similar to the ones in Stokeling. I want to say the Leggett case, which was one of the cases that I came across in doing all these Johnson cases in Connecticut, talks about a situation where a defendant appealed, said that the conviction shouldn't stand because there wasn't shown about his intent as to the force, and the, I want to say it's the Connecticut Appellate Court, rejected that idea because they said, well, really intent goes to the idea that you're taking someone's property, you know you're taking someone's property, whereas the force can just be part of the circumstances of the event. If the court likes, I can try to submit a Rule 28J letter that gives the citation and hopefully confirms what I'm saying. It seems to me that the Supreme Court's discussion in Stokeling, while it contains some discussion which suggests, arguably suggests that it's inconsistent with our rationality in Shabazz, nonetheless, the holding of Stokeling was based on the absence of Florida decisional law that would support the application that was argued. And why isn't that the biggest problem that you can't overcome here with respect to Connecticut law? I just want to take your question, Your Honor, and make sure I understand it. So the idea that I can't point you to a case as, you know, there are lots of holdings that you've got to be able to point to. Right. That's what Stokeling held, is there are no cases in Florida law. And I think that's your problem, too. Well, I think in Stokeling, there's discussions of the Florida cases, you know, both obviously in the majority and the minority, and I realize the minority doesn't win, but there is a lengthy discussion about the types of cases and different cases there. There isn't a magic Florida case for the defendant that says force essentially is a fiction and that no force, you know, is the same as force. And I know I'm not standing here with a case that says that about Connecticut either. I recognize that. Why isn't that responsible? So because ultimately you can look to how the Connecticut State Supreme Court has looked at the statutes in terms of this issue I have about larceny from the person being a more severe crime or, you know, more punitive. I mean by my question to say that Connecticut has to have actually ruled on the case and that was the basis of the case. I mean, I would say that if you had Connecticut, substantial Connecticut holdings, particularly from high courts, which endorsed your view of the law, even though they didn't apply it to make the holding in that case, that would be something. It would show that the Connecticut courts accept your view. Do you have that? Your Honor, I don't have that with me. I don't want to misrepresent what I have. You know, I have some concerns about that approach to the issue because let me give you two of them. One is that we're supposed to look to the statute and parse the statute and look at the understanding of the statute and how it's been interpreted, and I recognize that I'm not pointing out a way it's been interpreted in my favor. So that doesn't necessarily require me to pull out the case that talks about a weird kind of robbery. So I think that's part of my concerns with that approach and making that dispositive. The other part of it, I would say, just as from a practice standpoint, if someone is arrested in Connecticut on the scenario that I'm suggesting about the shoplifter crashing into somebody else or I go into someone's house, while they're voluntarily in the restroom, I lock the door, grab the diamond ring off the counter, maybe that's robbery too. And I realize I'm creating hypotheticals, and I know from Hill and other cases that this court isn't a big fan of that approach, but at the same time, with the way the cases are charged and worked out in Connecticut, I can readily indicate from having practiced in state court that you can imagine a scenario along the lines that I've described, these hypotheticals, where the person will be charged with larceny, they'll be charged with robbery, they might be charged with trespass because they came into the house appropriately but then decided to commit a crime and obviously weren't going to be allowed to stay after that. So they'll be charged with burglary. And the way the case is going to work out is the person is going to probably plead to whatever one fits the best. And maybe robbery doesn't fit the best, but ultimately we still go back to the statute and see if the elements can be made. And I think that's something that has become more clear as we engage in a categorical analysis. So I know I've way gone over my time, and I'll concede the podium to Mr. Stillman. Good morning. May it please the Court. My name is Mark Silverman. I represent the United States in this appeal. There's only one question presented in this appeal, whether a prior conviction for robbery in state court in Connecticut qualifies categorically as a violent felony under the Force Clause of the Armed Career Criminal Act. If this Court has definitively answered that question, and held that such a robbery conviction does qualify as an act of predicate. That's the first Shabazz decision. Do you think our decision in Shabazz sweeps more broadly than the Supreme Court's decision in Stokeling? No, Your Honor, I think it's very much consistent with the decision in Stokeling, and I think that's reinforced by the chronology here. I just wanted to make this point. The Shabazz decision comes down on January 4, 2019. Eleven days later, the Supreme Court decides Stokeling. About a month after that, Mr. Shabazz files a petition for panel rehearing and rehearing en banc, in which one of his primary arguments is Stokeling has come down, and it's different, and you should consider this. About two months later, on April 26, 2019, this Court issues a decision denying the petition for panel rehearing, at which the Stokeling issue had been squarely presented and raised. About a month and a half after that, I'm sorry, about a month after that, May 21, this Court denies the petition for rehearing en banc. And so although this Court didn't have the benefit of Stokeling when it issued the first Shabazz decision, it certainly did when it issued the second Shabazz decision, both authored by Judge LaValle. And so the arguments that have been presented today are nearly identical to those that were presented in the petition for rehearing, and they've been rejected by this Court. It's the government's view that the Shabazz decisions are binding and that they squarely resolve the single issue presented. So the government's view is that this Court should affirm the judgment entered by the district court. It seems to me there's unquestionably language in Stokeling which takes an approach that is hard to reconcile with some of the reasoning of Shabazz. But that is, in a way, that's some explanatory language, but the Supreme Court's decision in Stokeling was based on the absence of Florida precedent that supported the defendant's arguments. Yes, Your Honor, I think that's right. There is some additional language in Stokeling. When I said earlier, I think the two, the Shabazz decision and the Stokeling decision, largely align with one another. I think the ultimate resolution here in both of them is there's no case in Florida, there's no case in Connecticut, that suggests you can commit a robbery without some sort of force that is capable of causing physical pain or injury. That's the magic language from the 2010 Johnson decision of the United States Supreme Court. Now, my adversary has raised some interesting hypotheticals about, well, maybe this could qualify as a robbery in Connecticut, maybe this could qualify as a robbery in Connecticut. There's no case that he can point to, and this Court's been quite clear in the Hill decision that, and I'll quote it, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy. In other words, hypotheticals are not enough. There needs to be a realistic possibility. The defendant has to point to his own case or another case if he wants to show that the statute can be read in the way that gets around these force requirements. Now, I did want to make one other point about... There has to be a holding in that case. I don't see any reason why it can't be a discussion by a court that endorses the proposition but rules the other way, rules on a different ground, but endorses the proposition that the person is arguing. And that may be, Judge LaValle. I think the issue here, though, is that there's no factual scenario  that would show a robbery that was not in the presence of the victim, this was Judge Bianco's point, or that didn't involve this level of force. I mean, the Wright decision is quite clear that, at its mildest, the threat of a pinch, a scratch, or a slap would suffice. Now, that was presented to this Court in the Shabazz arguments, but it's also something that I think the Stokeling decision tackles. In Stokeling, the Supreme Court has embraced Justice Scalia's concurrence, and his concurrence in Castleman, Justice Scalia had written that actions as small as hitting, slapping, shoving, grabbing, pinching, biting, and hair-pulling satisfied the force threshold. That was his concurrence. In Stokeling, Justice Thomas, writing for the majority, says this understanding of physical force is consistent with our holding today that force is capable of causing physical injury within the meaning of Johnson. So those types of actions, the ones that Wright enumerates, in my view, at least, Stokeling reinforces that the Connecticut bare minimum crosses the Johnson 2010 threshold of force. Justice Thomas, actually, there was a Florida case where it involved peeling back a person's finger to get their money out of their hand, and he said, obviously, that that was enough. Right. And so I think Stokeling reinforces, in some ways, it very much reinforces Judge LaValle's decisions in Shabazz. What do the Connecticut cases say on the simple robbery provision that last prong engaging in other conduct would aid in the commission of the larceny? Yes, Your Honor. So I couldn't, and I have not practiced in state court like my adversary, but I don't know that I could walk you through them in some academic manner. What I can say is that in Wright, the state Supreme Court noted that the distinguishing characteristic of simple robbery is that force or the threat of immediate force is used to facilitate the taking, whether the property is from the person or not. So I say that last piece because I think it echoes Judge Bianco's point earlier. You have to commit some act, and it has to be the force. This is the language of the simple robbery statute. The robber has to use or threaten the immediate use of physical force upon another person for the purpose of any of those things. It can't be some accidental, oh, I've crashed into this person while I'm running out of the store. It has to be for the purpose of. There has to be that intentionality. And so it could be that a robber walks up to someone on the street and says, I think this is the example in the Hill case, that's a nice car. Would you like to continue driving it? It could be, maybe you're driving a nice car. Give me your keys. And that threat would be enough, even though the car is not on that victim's person. It might be parked down the street. Give me your keys. As long as that carries with it, the threat of a pinch, a scratch, a slap, or something more serious than that would categorically qualify under the ACCA's force clause. And so I guess the point here in the government's view is that Chabaz remains good law after Stoeckling. I think the court did have an opportunity to consider Stoeckling when it issued the second Chabaz decision, and that this panel should continue to follow that panel's ruling that Connecticut robberies qualify as ACCA predicates so that Mr. R. Cermera is still subject to the ACCA's enhanced penalties and that the judgment entered by the district court should be affirmed. Thank you. I do have a memory that may be incorrect from the Chabaz argument that Your Honor brought up this idea that one person could tap somebody on the shoulder as misdirection while the other person picked their pocket, and that would be force, right? It would be a really teeny-tiny amount. It wouldn't be a slap, a pinch. So there are the hypotheticals that could get us there. I guess my biggest concern is the fact that the concern about the perhaps perceived, I don't want to say imbalance, but inconsistencies between Chabaz and Stoeckling is that really in the end this idea that there's a risk that someone could be injured, that sounds really familiar. And the reason that sounds really familiar is because that is the residual clause. So this approach to force just seems to be resurrecting that. Maybe that's a reaction to the idea that in 2015 when Johnson came out, all of a sudden I'm getting calls from the U.S. Attorney's Office that nothing is violent anymore, nothing counts anymore. And for a while it did seem like that. And maybe the pendulum has swung the other way. But in the end, I'll rest on my briefs unless the panel has any other questions, and we'll see where this goes. Thank you both for coming in. We appreciate it. Very nicely argued on both sides. Thank you. Thanks so much.